# 24-0165-cv

## United States Court of Appeals
### *for the*
## Second Circuit

———————————◆———————————

UP STATE TOWER CO., LLC, BUFFALO LAKE ERIE
WIRELESS SYSTEMS, CO. LLC,

*Plaintiffs-Counter-Defendants-Appellants,*

– v. –

TOWN OF CHEEKTOWAGA, TOWN BOARD OF
TOWN OF CHEEKTOWAGA,

*Defendants-Defendants,*

– v. –

SOUTHLINE LITTLE LEAGUE, INC. f/k/a Southline Athletic Association,

*Third-Party Defendant-Appellee.*

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFFS-
## COUNTER-DEFENDANTS-APPELLANTS

JON P. DEVENDORF
BARCLAY DAMON LLP
*Attorneys for Plaintiffs-Counter-*
*Defendants-Appellants*
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
(315) 425-2724

CP COUNSEL PRESS    (800) 4-APPEAL • (513510)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiffs/Appellants Up State Tower Co, LLC and Buffalo-Lake Erie Wireless Systems Co., LLC ("Plaintiffs") hereby disclose that they are both 100% privately-owned limited liability companies, they have no parent corporations, and no publicly-held corporation owns 10% or more of its membership.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE.................................................................3

STANDARD OF REVIEW ...................................................................11

SUMMARY OF THE ARGUMENT ........................................................12

ARGUMENT ..................................................................................16

I.      SUMMARY JUDGMENT LEGAL STANDARD .......................................16

II.    THE DISTRICT COURT ERRONEOUSLY CONCLUDED BASED ON ITS ADJUDICATION OF MATERIAL ISSUES OF DISPUTED FACT AND ITS RETROACTIVE CONCLUSION OF THE NATURE AND SCOPE OF THE RESTRICTIVE COVENANT THAT PLAINTIFFS' ATTORNEYS' FEES TO BE CONSEQUENTIAL DAMAGES RATHER THAN GENERAL DAMAGES THAT WERE WAIVED .........................................................17

      a.      Breach of Contract Elements.................................................17

      b.      The Law on General and Consequential Damages ...........................17

      c.      The District Court committed plain error by adjudicating material issues of fact in favor of the moving party Southline and misapplying key facts in coming to its conclusion that Plaintiffs' attorney's fees were unforeseeable consequential damages .........................................................20

      d.      The District Court committed plain error by ignoring contradictory language within the Lease itself as to whether the parties intended to exclude attorney's fees from their consequential damages waiver .........................................................28

III. THE DISTRICT COURT ERRONEOUSLY CONCLUDED
BASED ON ITS ADJUDICATION OF MATERIAL ISSUES OF
DISPUTED FACT AND ITS RETROACTIVE CONCLUSION OF
THE NATURE AND SCOPE OF THE RESTRICTIVE
COVENANT THAT PLAINTIFFS' RELIANCE WAS NOT
REASONABLE OR FORESEEABLE AND THAT
SOUTHLINE'S WARRANTY WAS AUTOMATICALLY
UNENFORCEABLE ....................................................................................... 34

a. Fraud Elements ....................................................................................... 34

b. Plaintiffs were not in a greater position of knowledge than
Southline with respect to the restrictive covenant in
Southline's own deed, and any alleged knowledge of the
restrictive covenant by Plaintiffs at the time of the contract
alone was insufficient to dismiss Plaintiffs' fraud claims on
summary judgment .............................................................................. 35

IV. THE DISTRICT COURT COMMITTED PLAIN ERROR WITH
RESPECT OT THE INDEMNITY PROVISION FOR THE SAME
REASONS STATED ABOVE ....................................................................... 43

V. THE DISTRICT COURT ERRONEOUSLY GRANTED
SOUTHLINE FEES AND COSTS UNDER THE LEASE IN
CONTRADICTION OF ITS DETERMINATION OF
PLAINTIFFS' CLAIM AND WHERE PLAINTIFFS DID NOT
INITIATE THIS LAWSUIT AGAINST SOUTHLINE BUT,
RATHER DEFENDED THE CHALLENGE TO THE
RESTRICTIVE COVENANT WHEN SOUTHLINE FAILED TO
DO SO ............................................................................................................ 44

CONCLUSION ....................................................................................................... 46

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)................................................................16

*Ashland Mgt. v. Janien,*
82 N.Y.2d 395 (N.Y. 1993) .................................................. 18, 30

*Bailey v. Fish & Neave,*
8 N.Y.3d 523 (2007)...............................................................33

*Banque Arabe et Internationale D'Investissement v. Maryland Natl Bank,*
57 F.3d 146 (2d Cir. 1995) ......................................................34

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of NY,*
10 N.Y.3d 187 (N.Y. 2008) ........................................... 18, 19, 30

*Biotronik v. Conor Medsystems,*
22 N.Y.3d 799 (N.Y. 2014) .....................................................19

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
98 F.3d 13 (2d Cir. 1996) .......................................................34

*Darnell v. Pineiro,*
849 F.3d 17 (2d Cir. 2017) ................................................. 11-12

*DDJ Mgmt., LLC v. Rhone Grp. L.L.C.,*
15 N.Y.3d 147.......................................................................36

*Delaney v. Bank of Am. Corp.,*
766 F.3d 163 (2d Cir. 2014) ....................................................12

*Doe v. Dep't of Pub. Safety ex rel. Lee,*
271 F.3d 38 (2d Cir. 2001), *rev'd on other grounds*
*Conn. Dep't. of Public Safety v. Doe*, 538 U.S. 1 (2003) ............16

*Donnelly v. Guion,*
467 F.3d 290 (2d Cir. 1972) ....................................................16

*Empire Electronics Co. v. U.S.,*
311 F.3d 175 (2d Cir. 1962) ....................................................27

*Equit. Lbr. Corp. v. IPA Land Dev. Corp.,*
38 N.Y.2d 516 (N.Y. 1976).....................................................18

iv

*FLLI Moretti Cereali S.P.A. v. Continental Grian Co.*,
    563 F.2d 563 (2d Cir. 1977) ........................................................17

*Garza v. Marine Transport Lines, Inc.*,
    861 F.2d 23 (2d Cir. 1988) ..........................................................16

*Gonzalez v. 40 W. Burnside Ave. LLC*,
    107 A.D.3d 542 (1st Dep't 2013) ...............................................36

*Gracia v. Hartford Police Dep't*,
    706 F.3d 120 (2d Cir. 2013) ........................................................12

*Greenfield v. Philles Records, Inc.*,
    98 N.Y.2d 562 (2002) ................................................... 33, 38, 44

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
    889 F.2d 1274 (2d Cir. 1989) ......................................................32

*Johnson v. Nextel Commc'ns, Inc.*,
    660 F.3d 131 (2d Cir. 2011) ........................................................17

*Kenford Co. v. County of Erie*,
    73 N.Y.2d 312 (N.Y. 1989) ................................................. 18, 19

*Law Debenture Trust Co. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010) ....................................... 32, 33, 38, 44

*Leon v. Murphy*,
    988 F.2d 303 (2d Cir. 1993) ........................................................16

*National Life Ins. Co. v. Solomon*,
    529 F.2d 59 (2d Cir. 1975) ..........................................................17

*Network Publishing Corp. v. Shapiro*,
    895 F.2d 97 (2d Cir. 1990) ..........................................................33

*Ross v. Louise Wise Servs., Inc.*,
    8 N.Y.3d 478 (N.Y. 2007) ...........................................................18

*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2000) ........................................................19

*Seiden Assocs. v. ANC Holdings, Inc.*,
    959 F.2d 425 (2d Cit. 1992) ........................................................26

*Swersky v. Dreyer & Traub*,
    219 A.D.2d 321 (1st Dep't 1996).................................................36

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
663 F.3d 556 (2d Cir. 2011) ..........................................................................12

*Tractebel Energy Mktg., Inc. v AEP Power Mktg., Inc.*,
487 F.3d 89 (2d Cir. 2007) ...........................................................................19

*U.S. v. Diebold, Inc.*,
369 U.S. 654 (1962)........................................................................................16

*Molina v. City of Rochester*,
2017 U.S. Dist. LEXIS 47994 (W.D.N.Y. Mar. 30, 2017) ...........................16

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

47 U.S.C. § 332 .................................................................................................7

Fed. R. Civ. P. 56(c)................................................................................. 16, 27

24 Lord, Williston on Contracts § 64:12 (4th ed.)..........................................19

# JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), the United States District Court has subject matter jurisdiction over this action because the claims are brought under the laws and treaties of the United States.

Pursuant to 28 U.S.C. § 1291, the Second Circuit Court of Appeals has jurisdiction because this Appeal is taken from a Decision and Order, and Final Judgment of the Northern District of New York, Hon. Geoffrey W. Crawford ("District Court"), which granted Third Party Defendant-Respondent Southline Little League Inc. f/k/a Southline Athletic Association's ("Southline") motion for summary judgment in its entirety, and denied Plaintiffs' motion for summary judgment in its entirety. The Decision and Order was signed December 18, 2023, and entered December 19, 2023. Final judgment on these motions was entered on December 19, 2023. Plaintiffs filed a Notice of Appeal on January 17, 2024.

# STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the District Court erred in denying Plaintiffs' motion for summary judgment and granting Southline's motion for summary judgment in relation to claims arising from the parties' Lease Agreement, dated April 12, 2016 ("Lease") where:

(1) The District Court erroneously identified but then adjudicated material disputed issues of fact concerning the reasonableness and foreseeability of

- 1 -

Plaintiffs' reliance upon and litigated defense of Southline's representation and warranty concerning the suitability of the site for the cellular tower when challenged by the intervening party.

(2) The District Court erroneously applied its January 2021 adjudication of the nature and scope of the restrictive covenant challenged by the intervening party retroactively to then summarily conclude that Plaintiffs' reliance on Southline's representation and warranty when entering the 2016 Lease was not reasonable or foreseeable.

(3) The District Court erroneously concluded that knowledge of the existence of a restrictive covenant automatically and conclusively means that the separate contractual representation and warranty made by Southline about the nature and scope of that covenant cannot be enforceable.

(4) The District Court erroneously concluded based on its adjudication of material issues of disputed fact and its retroactive application of its January 2021 conclusion on the nature and scope of the restrictive covenant that Plaintiffs' attorney's fees are consequential damages rather than general damages that were waived.

(5) The District Court erroneously granted Southline's fees and costs under the Lease in contradiction of its determination of Plaintiffs' claim and where Plaintiffs did not initiate this lawsuit against Southline but, rather,

defended the challenge to the restrictive covenant when Southline failed to do so.

## STATEMENT OF THE CASE

This case is the culmination of an over six year-long attempt by Plaintiffs to erect a personal wireless service facility to remedy a significant gap in wireless service in the Town of Cheektowaga ("Town"). *See* AR19-59, 174-82, 385-91. After enduring repeated flip-flops by the Town regarding the availability of Town-owned property, Plaintiffs pursued an application to construct a wireless telecommunications tower and related equipment (the "Proposed Facility") on a parcel located at 294 N. Seine Drive (the "Proposed Site"), which is owned by Southline. *See id.*

Plaintiffs submitted a zoning application to the Town for construction of the Proposed Facility on October 17, 2016. *See* AR19-59, 174-82, 385-91. Plaintiffs contacted Southline and engaged in arms-length negotiations to secure a lease for the Proposed Site before Plaintiffs submitted the zoning application. *See id.* Southline was at all times aware that Plaintiffs desired to construct and operate a personal wireless service facility on the Proposed Site. *See id.* Southline retained and engaged outside counsel to research and review the proposed Lease, and to assist Southline's board members with drafting and negotiating the terms within same. *See id.; see also* AR88-98, 189-269, 378-401, 977-1057.

- 3 -

During these negotiations, Southline represented to Plaintiffs that it owned the property on which the Proposed Site was located, and that the property was free of any encumbrances that would interfere with Plaintiffs' construction and operation of the Proposed Facility. *See* 88-98, 174-82, 183-86, 378-401, 977-1057. Southline further represented that it had the right to enter into a lease with Plaintiffs and that Southline had obtained and delivered to Plaintiffs the consent of any party that held a lien or other interest on the property on which the Proposed Site is located. *See id.* Southline admitted that, prior to its execution, Southline understood that the Lease was an agreement with Plaintiffs where Southline was making certain promises to Plaintiffs, including the promise and obligation that Southline would be leasing the Proposed Site to Plaintiffs for the purpose of constructing the Proposed Facility, and that Plaintiffs would rely on Southline's promises when they executed the Lease. *See id.*

Based on the arms-length negotiations, Plaintiffs and Southline entered into a lease agreement on April 12, 2016 for the purpose of constructing and operating the Proposed Facility on the Proposed Site (the "Lease"). *See* AR88-98. The Lease stated that Southline "agree[d] to lease the real property described on Exhibit A . . . to us and we agree to rent if from you so that we can construct and operate a communications facility as described on Exhibit B." *See id.* Exhibit B to the Lease included a diagram with a caption showing the "Proposed Tower Location." *See*

- 4 -

*id.* Subpart (b) of Paragraph 17 – Quiet Enjoyment – of the Lease includes Southline's promises about the lack of encumbrances on the property which would impact the intended use of the Proposed Site is located and that Southline has the lawful right and authority to enter into the Lease:

> (b) You promise us that: (i) you are the fee owner of the Premises and Easements; (ii) your ownership is free and clear of all liens, claims and encumbrances other than any which don't interfere with our use the Premises and Easements; (iii) you have the lawful right and authority to sign this Lease; and (iv) you have obtained and delivered to us the consents of all parties that hold any lien on or interest in the Premises or the Easements.

*See id.* Southline's representations in Paragraph 17 were material and induced Plaintiffs to enter into the Lease. *See id.* The Lease also required Plaintiffs and Southline to "indemnify and hold harmless each other from all claims and losses, to the extent the claims or losses are caused by . . . a breach by the indemnifying party under this Lease that has not been cured." *See id.* Southline obtaining consent from any party that held an interest in the Proposed Site so that Plaintiffs could construct and operate the Proposed Facility on the Proposed Site was a further material requirement for Plaintiffs in entering the Lease with Southline. *See id.;* AR174-82, 385-91.

Mark Mazurek signed the Lease on behalf of Southline in his capacity of Southline's Vice President. *See* AR88-98, 174-269, 385-409, 977-1057. Southline represented the Lease to its outside counsel for review prior to Southline's execution.

*See id.* Although they were presented with a copy of the Lease, and Mr. Mazurek relayed any communications or information that he received concerning same, none of the other board members for Southline reviewed the Lease or conducted any due diligence prior to voting in favor of approving same. *See id.* In contrast, Plaintiffs have performed all of its obligations under the Lease. *See id.* Plaintiffs included a redacted copy of the Lease with their zoning application to the Town. *See id.*

On April 9, 2018, two years after the Lease was executed, and after Plaintiffs had relied on the Lease in pursuing zoning approval for the tower, the School District wrote a letter to Southline, on which Plaintiffs were copied. *See* AR99-106. The letter alleged that the deed for the property on which the Proposed Site is located contained a covenant that, the School District alleged, prohibited Southline from using the Proposed Site for the cellular tower (the "Covenant"). *See id.* The letter further asserted that the Lease violated the Covenant because the Proposed Facility was not a "recreational purpose" under its charter, and that the School District intended to enforce the Covenant and oppose Plaintiffs' zoning application to construct and operate the Proposed Facility. *See id.*

Based on its review, Plaintiffs disputed that the Covenant would bar the construction and operation of the Proposed Facility, maintained the Covenant did not void the Lease between Plaintiffs and Southline, and further demonstrated that a Town could not rely upon such an issue in properly addressing its application under

- 6 -

the Telecommunications Act. *See* AR99-106. On January 31, 2019, the Town ultimately denied Plaintiffs' zoning application. *See* AR19-59, 174-82, 385-91. The Town specifically referenced the Covenant in its denial, and stated that the Covenant's presence meant that Plaintiffs had failed to satisfy the Town's Code requirement that they had "the right to proceed as proposed on the site." *See id.* The Town denial was in conflict with the contractual representation and warranty given by Southline and with Southline's obligation to secure any consent needed in entering into the Lease. *See id.*

On March 1, 2019, Plaintiffs initiated the present litigation against the Town to enforce their rights to construct the Proposed Facility at the Proposed Site pursuant to 47 U.S.C. § 332. *See* AR19-59. On March 25, 2019, counsel for Plaintiffs sent a letter to Southline that stated, among other things, that Plaintiffs "relied on Southline's representation in the Lease that it has the capacity to enter the lease without restriction. In the event it is determined that such representation was false, [Plaintiffs] will hold Southline liable for any damages sustained by [Plaintiffs] in pursuing this project." *See* AR101-103.

On April 15, 2019, the School District intervened, bringing a counterclaim against Plaintiffs for interference with property and a third-party action against Southline to enforce the restrictive covenant. *See* AR64-103. On June 19, 2020, Plaintiffs brought a cross claim against Southline for breach of contract, fraud, and

indemnification. *See* AR72-106. Southline answered with cross claims of its own against Plaintiffs for rescission based on unilateral mistake, mutual mistake, and impossibility. *See* AR107-127.

On October 8, 2019, Plaintiffs' counsel sent Southline a second letter that stated,

> Given the language of the Lease Agreement, which, among other things, contains Southline's express representation and warranty that it had the right to enter the Lease Agreement, that the property was free of all encumbrances and that any consents required for the Lease Agreement had been obtained, we view there to be a mutual interest between [Plaintiffs] and Southline in the enforcement of the Lease Agreement. Were the Lease Agreement not be defended and enforce for some reason, [Plaintiffs] would then be left to pursue what would be substantial financial losses from Southline."

*See* AR 104-106.

On August 21, 2020, the School District and the Town filed motions for judgment on the pleadings. *See* AR104-106. On January 4, 2021, the District Court determined that the School District's claims were valid and the Covenant prevents the installation of the Proposed Facility at the Proposed Site. *See* AR137-71. Accordingly, the District Court granted summary judgment for both the Town and the School District, dismissing both parties from the action. *See id.* The District Court maintained supplemental jurisdiction over the cross claim, which was the only remaining dispute. *See id.*

- 8 -

After the parties engaged in discovery, on March 14, 2023, Plaintiffs and Southline filed motions for summary judgment. *See* AR172-1159. On December 18, 2023, the District Court granted summary judgment for Southline in its entirety, and denied summary judgment for Plaintiffs in its entirety. *See* SPA1-16. The Decision and Order, along with the corresponding Final Judgment, were entered by the Clerk on December 19, 2023. *See id.* Specifically, in its Decision and Order, the District Court held:

- The waiver of consequential damages within the parties' Lease bars Plaintiffs' breach of contract claim.

- The attorney's fees sought by Plaintiffs constituted consequential damages, and not general damages."

- More specifically, that based on "the parties' plans," a reasonable person "would have known that at the time of formation that [Plaintiffs] intended to build a tower and that the restrictive covenant might present an obstacle. He would have seen the generous provisions for cancellation placed by Up State in its form contract. From these provisions, a reader might reasonably expect [Plaintiffs] to walk away from the project if it did not receive planning permission" and, therefore, Plaintiffs' attorney's fees were not reasonably foreseeable or constituted general damages (but, instead, consequential damages).

- 9 -

- And that "no reasonable person *could* have anticipated from the language of the lease was [Plaintiffs'] decision to litigate the issue" and, "[t]o anticipate the litigation and resulting costs would require special information about [Plaintiffs'] needs and intentions" and, therefore, Plaintiffs' attorney's fees were consequential damages.

- That Paragraph 14 of the Lease unambiguously waived claims to attorney's fees, even in the face of Paragraph 23's language (and that Southline was brought into this lawsuit as a third party defendant by Intervenor School District).

- That there was no question of fact that Plaintiffs' "knew about the restrictive covenant at the time it entered into the [Lease]" and, more importantly, knew that the Covenant would bar Plaintiffs' intended use of the property for the Proposed Facility, and, therefore, it was unreasonable for Plaintiffs to rely on representations of Southline, as owner of the Proposed Site, which promised otherwise.

- That Southline established that Plaintiffs could not have reasonably relied on Southline's representations that the property was "Free and clear of all liens, claims and encumbrances" for the intended use because Plaintiffs are "in the business of sitting, permitting and constructing communications towers; [their] leasing agent obtained a

- 10 -

copy of the deed, including the restrictive covenant; and [their leasing agent] inserted the metes and bounds legal description" into the Lease.

- That the Lease unambiguously awards Southline attorney's fees under Paragraph 14 of the Contract, although the District Court simultaneously determined that attorney's fees were consequential damages and, therefore, waived by the parties' under the Lease.

*See* SPA10-15.

The clerk of court entered judgment in favor of Southline on December 19, 2023. *See* SPA16. On January 17, 2024, Plaintiffs filed their Notice of Appeal, which appealed each and every part of the District Court' Decision, Order, and Final Judgment. *See* AR1242-43. Additionally, thereafter, the parties filed their submissions regarding Southline's request for attorney's fees and costs pursuant to the District Court's Decision and Order. *See* AR1244-48. On April 5, 2023, the District Court issued its Decision and Order, which held Southline's award of fees in abeyance pending the Second Circuit's determination on this appeal. *See id.*

Plaintiffs' now appeal from the Final Judgment, Decision and Order of the District Court in their entirety.

## STANDARD OF REVIEW

The appropriate standard of review when assessing a District Court's grant of summary judgment to a defendant is *de novo*. *See Darnell v. Pineiro,* 849 F.3d 17,

22 (2d Cir. 2017). As such, "[i]n reviewing a summary judgment decision, [the Second Circuit] appl[ies] 'the same standards applied by the district court.'" *See Gracia v. Hartford Police Dep't,* 706 F.3d 120, 126 (2d Cir. 2013) (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 567 (2d Cir. 2011)). The standard requires the appellate court to construe all facts in the light most favorable to the non-movant, and draw all reasonable inferences in the non-movant's favor. *See Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 167 (2d Cir. 2014). Where such application results in a genuine dispute of material fact, summary judgment was inappropriate and the appellate court may reverse course.

## SUMMARY OF THE ARGUMENT

Respectfully, the District Court erred in multiple ways in granting Southline's motion for summary judgment.

Initially, it is generally accepted that determinations of witness credibility, the reasonableness of a party's reliance upon the contractual representation of another, the foreseeability of conduct in response to developing and unknown events, and the resolution of disputed facts are all matters not resolvable on summary judgment but, rather, best left for a full adjudication on the merits by the trier of fact. Here, the District Court nonetheless made a host of such factual determinations in favor of Southline as the basis for granting the motion. All such determinations should have been left to the trier of fact at Trial.

- 12 -

In addition, the District Court effectively stood the import of the contractual representations and warranty of Southline on its head to conclude that Plaintiffs, rather than Southline, bear the brunt of the truthfulness of the assertions and did so by retroactively applying its 2021 ruling to the 2016 negotiation of and entry into the Lease. Indeed, it was Southline (not Plaintiffs) that contractually warranted that (a) the Property was useable for the subject cellular tower and (b) that any needed consents associated with the Lease had been obtained. The District Court simply ignored the contractual warranty based on Plaintiffs' supposed awareness of the restrictive covenant to conclude, as a matter of fact and law, that reliance upon Southline's contractual representations was impermissible. First, the mere awareness (or not) of the covenant does not at all prevent arms-length parties from nonetheless binding themselves to a contract containing a representation and warranty. Parties may of course validly contract in a manner that imposes or shifts the import of such knowledge to one as opposed to the other. Contrary to the apparent thinking of the District Court, the contractual provision at issue did not simply say that there was no restrictive covenant or title impediment. Rather, the contractual provision expressly provided that there is no such title impediment that would impact the intended use of the Property for the cellular facility. Consequently, Plaintiffs' knowledge or not of the covenant has no bearing at all on the validity of

the representations and warranty made by Southline in the Lease about the very Property that it owned.

Moreover, the District Court compounded the error by using its January 2021 determination to drive the analysis and ultimate conclusion. Again, as stated above, the contractual representation of Southline stands on its own without regard to what Plaintiffs allegedly knew or didn't know about title to the Property. But, carrying it further, the determination that the restrictive covenant barred the cellular facility (i.e. that the erection of the tower was not in keeping with the Charter of Southline) was not even made until 5 years after the Lease was entered. The District Court based its determination of the stated unreasonableness of Plaintiffs' 2016 reliance on the conclusion ultimately reached in 2021 about the nature, meaning and scope of the restrictive covenant. Respectfully, Plaintiffs' reliance is not properly judged based on the hindsight of the 5 years of contested litigation proceedings. Instead, Plaintiffs were well within their right to (a) contractually shift the import of the risk of property usage to Southline through the Lease provisions and (b) reasonably believe that the covenant did not prevent the planned cellular facility under the Charter of Southline. Plaintiffs did not know of the intervention of the School District at the time of the Lease, nor was there any determination made on the covenant until after fully contested proceedings. Consequently, it was error to vitiate the contractual provisions merely because the District Court concluded that Plaintiffs knew of a

restrictive covenant and error to retroactively apply the determining factors in the January 2021 decision to the 2016 negotiations.

Lastly, upon its determination, the District Court awarded fees and costs to Southline while denying the very same fees and costs to Plaintiffs. As the Record demonstrates, the subject Lease contained the contractual representations and warranty which came under attack by the intervening School District. Instead of upholding and defending its agreement with Plaintiffs, Southline stood silent in the face of the School District challenge and left the dispute over the restrictive covenant to Plaintiffs alone. Contrary to the District Court's view, it was not at all unforeseeable that Plaintiffs would, first, defend against the validity of the covenant used by the Town to deny the siting application and, second, to proceed against Southline concerning the breach of the Lease and the harm sustained by Plaintiffs in litigating the challenge to the restrictive covenant. The District Court removed any responsibility on any level from Southline, and instead imposed it on Plaintiffs.

Accordingly, it is submitted that District Court's decision should be reversed.

## ARGUMENT

## I.  SUMMARY JUDGMENT LEGAL STANDARD

"Summary judgment is appropriate where the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Molina v. City of Rochester*, 2017 U.S. Dist. LEXIS 47994, *7 (W.D.N.Y. Mar. 30, 2017) (citing Fed. R. Civ. P. 56(c)).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986).  In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Conn. Dep't. of Public Safety v. Doe*, 538 U.S. 1 (2003).

Summary judgment is a "drastic procedural weapon" as it "cuts off a party's right to present [its] case to the jury."  *See Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 26 (2d Cir. 1988) (citing *Donnelly v. Guion,* 467 F.2d 290, 291 (2d Cir. 1972)).  Accordingly, this "harsh remedy" should only be applied where it is "clear

that a case does not present an issue of material fact" after "resolv[ing] all ambiguities and draw[ing] all reasonable inferences in favor of the party against whom summary judgment is sought." *FLLI Moretti Cereali S.P.A. v. Continental Grian Co.,* 563 F.2s 563, 565 (2d Cir. 1977) (citations omitted). If there is any factual contention still in dispute, the district court may not grant summary judgment in favor of the moving party. *National Life Ins. Co. v. Solomon,* 529 F.2d 59, 61 (2d Cir. 1975) (citations omitted).

## II. THE DISTRICT COURT ERRONEOUSLY CONCLUDED BASED ON ITS ADJUDICATION OF MATERIAL ISSUES OF DISPUTED FACT AND ITS RETROACTIVE CONCLUSION OF THE NATURE AND SCOPE OF THE RESTRICTIVE COVENANT THAT PLAINTIFFS' ATTORNEYS' FEES TO BE CONSEQUENTIAL DAMAGES RATHER THAN GENERAL DAMAGES THAT WERE WAIVED.

### a. Breach of Contract Elements

As stated in the District Court's Decision and Order, and in the parties' submissions on summary judgment, in order to establish a claim for breach of contract, Plaintiffs must prove the following elements: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).

### b. The Law on General and Consequential Damages

In its Decision and Order, the District Court did not consider whether the Lease had been breached by Southline. *See* AR10-14 ("Because this ruling

- 17 -

[regarding damages] is sufficient to resolve the breach of contract claim, the court does not reach the arguments concerning causation and mitigation of damages"). Instead, the Court improperly focused its entire analysis on Plaintiffs' request for attorney's fees as damages for the breach, and whether those fees were barred by the waiver contained in the last sentence of Paragraph 14 of the Lease. *See* AR10-14.

"It is well settled that in breach of contract actions 'the nonbreaching party may recover general damages which are the natural and probable consequence of the breach'" *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of NY,* 10 N.Y.3d 187, 192 (N.Y. 2008) (citing *Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319 (N.Y. 1989)). Damages for a contract claim are to compensate a plaintiff for their actual loss. *See Equit. Lbr. Corp. v. IPA Land Dev. Corp.,* 38 N.Y.2d 516, 521-22 (N.Y. 1976). Further, compensatory damages are intended to make the victim of wrongdoing whole. *See Ross v. Louise Wise Servs., Inc*., 8 N.Y.3d 478, 489 (N.Y. 2007). The damages are to place the wronged victim in the same position as it was prior to the wrongdoing. *See id.*

"The party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made." *Bi-Economy Mkt., Inc.,* 10 N.Y.3d at 192-93 (citing *Ashland Mgt. v. Janien,* 82 N.Y.2d 395, 403 (N.Y. 1993)). "It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, 'it is only necessary that loss from a

breach is foreseeable and probable.'" *Id.* General damages include "money that the breaching party agreed to pay under the contract." *Biotronik v. Conor Medsystems,* 22 N.Y.3d 799, 805 (N.Y. 2014) (citing *Tractebel Energy Mktg., Inc. v AEP Power Mktg., Inc.,* 487 F3d 89, 109 (2d Cir 2007)).

"Special or consequential damages, on the other hand, seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." *Schonfeld v. Hilliard,* 218 F.3d 164, 176 (2d Cir. 2000) (citations omitted). "Consequential damages, designed to compensate a party for reasonably foreseeable damages, 'must be proximately caused by the breach' and must be proven by the party seeking them." *Bi-Economy Mkt., Inc.,* 10 N.Y.3d at 193 (quoting 24 Lord, Williston on Contracts § 64:12, at 125 [4th ed]). "The distinction between general and special contract damages is well defined but its application to specific contracts and controversies is usually more elusive." *Biotronik,* 22 N.Y.3d at 805 (citations omitted). "To determine whether consequential damages were reasonably contemplated by the parties, courts must look to 'the nature, purpose and particular circumstances of the contract known by the parties . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or toF have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.'" *Bi-Economy Mkt., Inc.,* 10 N.Y.3d at 193 (quoting *Kenford,* 73 N.Y.2d at 319).

- 19 -

      **c.  The District Court committed plain error by adjudicating material issues of fact in favor of the moving party Southline and misapplying key facts in coming to its conclusion that Plaintiffs' attorney's fees were unforeseeable consequential damages**

The District Court erred in its determination that the attorney's fees were not foreseeable and, therefore, constituted consequential damages. *See* AR10-14. In short, the undisputed facts of the present appeal are as follows: (a) a significant gap existed in Plaintiffs' ability to provide its customers wireless services in the area at issue; (b) Plaintiffs undertook intensive and costly efforts to find a suitable location that was available for the construction of a telecommunications facility to address this gap; (c) during its searches and subsequent arm's length negotiations, Southline explicitly represented that it owned property suitable for a telecommunications facility and that said property was free of any encumbrances that would interfere with Plaintiffs' construction or operation of said facility; (d) although Southline's deed had a restrictive covenant within it, Southline would be more knowledgeable (or at least equally knowledgeable) as to whether their restriction hindered Plaintiffs' construction of the telecommunications facility and, therefore, it was not unreasonable for Plaintiffs to rely on Southline's representations related to same; (e) the restrictive covenant was not included in the Lease and there was insufficient evidence to determine why or how it was excluded from the Lease; (f) under the Lease, Southline promised to indemnify Plaintiffs in the event these representations turned out to be false; (g) based on the aforementioned gap and need for a

- 20 -

telecommunications facility in this area, and Southline's obligation to indemnify Plaintiffs in its pursuit of the telecommunications facility, Plaintiffs continued its intensive efforts by litigating the Town's denial of their application and promptly informed Southline of same; (g) in January 2021, the District Court provided its interpretation of the term "recreational purposes" within the restrictive covenant and in consideration of the conflicting language in Southline's charter, which would be the very first instance where Plaintiffs *could have known* that Southline's representations were false; (h) based on this determination, and the amount of money lost as a result of Southline's misrepresentation, Plaintiffs pursued its cross-claims against Southline; and (i) on summary judgment, the District Court granted Southline's motion and, therefore, Plaintiffs were the non-moving party who should have received all reasonable inferences from the District Court in its factual analysis. *See* AR174-391, 394-415, 977-1057.

Based on these facts alone, it was clearly foreseeable that Plaintiffs would rely on Southline's representations as to its *own* property and deed (a property it owned for over three decades), and would pursue its legal rights under the Lease to address this gap for its customers as a telecommunications provider, especially given Southline's assurances to indemnify Plaintiffs for any losses resulting from those representations. *See* AR88-98. In coming to a different conclusion in its Decision and Order, the District Court made a series of erroneous factual determinations –

- 21 -

material issues of fact that should have been left to a jury – and wrongfully viewed the evidence in a light most favorable to Southline, and resolved key ambiguities in Southline's favor (rather than Plaintiffs as the non-moving party). *See* SPA10-14.

First, for example, the District Court found that a "reasonable person" with no specialized knowledge would have viewed the restrictive covenant at the time of formation (i.e., April 2016 and *not* in January 2021 when the Court ruled on the "recreational purpose" restriction) and concluded that this "*might* present an obstacle." *See* SPA10-14. This holding alone presents an issue of fact acknowledged by the District Court that should not have been ignored (that a reasonable person might or *might not* make such a conclusion). *See id.* Further, and more importantly, the District Court drew this inference in favor of Southline, rather than Plaintiffs as the non-moving party. *See id.* Had the District Court viewed these facts or the evidence in favor of Plaintiffs, the court would have found that a reasonable person would rely on Southline's representations regarding the Proposed Site (a small portion of Southline's own property) regardless of the ambiguous language in the restrictive covenant (and corresponding ambiguous language in Southline's charter) given Southline's superior knowledge regarding its own property, deed, and charter. *See* SPA10-14; AR88-98, 183-188, 402-409.

Next, similarly, the District Court inferred from the "generous provisions for cancellation placed by [Plaintiffs] in its form contract" that a person "*might*

reasonably expect [Plaintiffs] to walk away from the project if it did not receive planning permission. *See* SPA10-14. Alternatively, a reader *might* be unable to predict the consequences of a denial of a permit by the town" *See id.* Here, the Court again acknowledges that there are questions of fact as to what a reasonable person might conclude from these provisions, but then resolved these ambiguities in favor of the moving party rather than Plaintiffs. *See id.* Based on this improper inference, the Court wrongly concluded on summary judgment that a reasonable person could not have anticipated that Plaintiffs would litigate this issue for several years in favor of Southline. *See id.*

Simply because Plaintiffs included opportunities to cancel the Lease at its own discretion, does not necessarily mean that it would abandon its legal rights at the first obstacle, or choose not to pursue their legal rights the moment the Town denied its application. *See* SPA10-14. Moreover, and more importantly, here, the District Court wrongfully and retroactively applied its conclusions relating to the nature and scope of the restrictive covenant from its January 2021 Decision and Order, rather than the knowledge of the parties at the time of the Lease's formation. *See id.* The District Court committed plain error by assuming that a "reasonable person" would have known at the time of the Lease's formation based on the ambiguous language in the restrictive covenant (and corresponding ambiguous language in Southline's charter) that Plaintiffs would be unsuccessful in this litigation over the following

years.  *See* SPA10-14. Again, the District Court should have drawn these inferences in favor of Plaintiffs, especially considering the indemnity clause that obligates Southline to cover Plaintiffs' costs in the event Southline's misrepresentations cause Plaintiffs to pursue any such litigation.  *See* AR88-98.

Additionally, by stating that no reasonable person could have anticipated that Plaintiffs would litigate the issue "*without success for several years*," the District Court wrongfully made another inference in favor of Southline (and based on the present viewpoint rather than that at the time of formation) that Plaintiffs would more likely abandon the litigation altogether because it had not succeeded on the merits in its initial stages.  *See* SPA10-14.  Had the District Court refrained from resolving these material issues of fact in favor of Southline, it would have determined that, at the time of formation, a reasonable person would have relied on Southline's representations regarding its own property, charter, and deed, and thereafter pursued its rights under the Lease knowing that Southline would cover those costs.  *See* AR88-98, 183-88, 402-409.  Instead, from its improperly drawn inferences in favor of Southline, the District Court determined that "the attorney's fees and other costs sought by [Plaintiffs] are *clearly* consequential damages in the sense that they would not be foreseeable without additional information" and that "to anticipate litigation and resulting costs would require special information about [Plaintiffs'] needs and intentions."  *See* SPA10-14.

- 24 -

However, in contrast to these improper factual analyses, Southline did in fact possess this "special information" at the time of formation because it was well aware of Plaintiffs' need and intention to fill the present gap in its telecommunications services for its customers, and the various efforts and costs already undertaken to do so. *See* AR72-136, 174-82, 189-269, 378-391. Southline was well aware that Plaintiffs had sought out various properties and made numerous attempts with the Town prior to its negotiations with Southline to find a suitable property for their telecommunications facility and, therefore, it was reasonably foreseeable that Plaintiffs would continue to vigorously pursue this venture as well as their legal rights under the Lease, and therefore Plaintiffs fees were the natural and foreseeable consequence of Southline's misrepresentations. *See id*. Additionally, Plaintiffs provided Southline with prior notice of their intention to litigate this issue, to which Southline did not object. *See id; see also* AR101-106, 510-512.

Further, as mentioned above, pursuant to Section 14 of the Lease, Southline promised to indemnify Plaintiffs in the event it pursued such a lawsuit and, therefore, would be well aware of its obligation when such a challenge arose as to the language within Southline's *own* deed. *See* AR88-98. Accordingly, even if it did require some "special information or knowledge," the damages were still foreseeable because Southline possessed this special information and knowledge, which is

- 25 -

supported by the documents and testimony that were submitted on the motions as well as the explicit words from the Lease itself. *See id.*

Even assuming arguendo that this was not the case, at the very least, a question of fact exists as to whether the damages were reasonably foreseeable. Throughout its Decision and Order, the District Court drew inferences, made predictions from, and resolved ambiguities surrounding the parties' contract language without any consideration of other outside evidence. *See* SPA10-14. "When the meaning of a contract is litigated, a reviewing court ordinarily looks only at the words used by the drafters, who presumably understood what they intended. Where the language used creates an ambiguity, a reviewing court must permit the receipt of evidence in order to see what was in the drafters' minds." *Seiden Assocs. V. ANC Holdings, Inc.,* 959 F.2d 425, 426 (2d Cit. 1992) (citations omitted). More importantly, "[w]here the language used [in a contract] is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate." *Id.* at 428 (citations omitted). Regardless, as stated throughout, "[i]f ambiguity is found, it must be resolved--as well as all inferences drawn--against the moving party, which has the burden of establishing that no facts material to the outcome of the litigation are in dispute." *Id.* at 429 (citations omitted). Here, the District Court acknowledged the various

interpretations that could be taken by the contract's language and then improperly resolved those ambiguities and granted summary judgment in favor of the moving party. *See* SPA10-14.

Summary judgment is proper where there is only "one inference [that] could reasonably be drawn from the undisputed evidentiary facts." *See* Fed. R. Civ. P. 56(c); *Empire Electronics Co. v. U.S.,* 311 F.2d 175, 180 (2d Cir. 1962) (citations omitted). The District Court committed plain error because it acknowledged in multiple areas of its factual analyses that more than one inference could be drawn, but still granted summary judgment in favor of the moving party. *See* SPA10-14. As stated above, courts are to resolve all ambiguities and view all evidence in the light most favorable to the non-moving party, which the District Court failed to do here. *See Empire Electronics Co.,* 311 F.2d at 180 (citations omitted). "If, when so viewed, reasonable men might reach different conclusions, the motion should be denied and the case tried on its merits." *Id.* "This admonition should especially be kept in mind when the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions." *Id.* Here, the District Court not only drew inferences and resolved ambiguities in favor of the moving party, but did so where the questions of fact dealt with subjective feelings and reactions (i.e., what a "reasonable person" would "anticipate" or "foresee").

- 27 -

In any event, there are admittedly a number of factual issues here that should have been left to a jury and, therefore, the Second Circuit should reverse this decision and deny summary judgment for Southline.

> ### d. The District Court committed plain error by ignoring contradictory language within the Lease itself as to whether the parties intended to exclude attorney's fees from their consequential damages waiver

Similarly, the District Court committed plain error when it determined that the waiver at the final sentence of Paragraph 14 of the Lease barred Plaintiffs' claim to attorney's fees because it again resolved ambiguities and drew inferences in favor of the moving party Southline, and ignored questions of fact that should have been left to a jury, including conflicting provisions within the Lease itself. *See* SPA10-14; AR88-98.

In this section of the Decision and Order, the District Court did not provide any interpretation or analysis over the provision itself. *See* SPA10-14. Instead, it came to the conclusion that Plaintiffs' attorney's fees were consequential damages for the reasons summarized above, and then generally pointed to the last sentence of Paragraph 14 of the Lease as an unambiguous waiver, which reads: "*Notwithstanding anything to the contrary in this Lease*, you and we hereby waive any claims that one of us may have against the other with respect to consequential, incidental, or special damages." *See id.;* AR88-98. The District Court did not review any of the other provisions within the Lease, or the other evidence submitted

by the parties, as to whether this waiver applied to "attorney's fees" specifically (in other words, whether the parties intended to exclude attorney's fees from this waiver). *See* SPA10-14. "Consequential damages" is an undefined term in the Lease, and rather than look to the parties' intentions (i.e., the other language within the Lease itself), the District Court interpreted the contract under its own notions and defined the term using its own interpretation under the law (which again drew inferences in favor of Southline). *See* SPA10-14. Had the District Court engaged in further analysis here, it would have determined that the parties did not intend to include attorney's fees in this waiver as evidenced by the other language in the Lease. *See* SPA10-14.

For example, there is contrary language within that very same Paragraph 14, which in its entirety reads:

> *Both of us will indemnify and hold harmless each other from all claims and losses*, to the extent the claims or losses are caused by (a) acts or omissions in operations or activities on the Property, the Premises or the Easements by the indemnifying party or the employees, agents, contractors, licensees, tenants (other than us if you are the indemnifying party) and/or subtenants of the indemnifying party, or (b) a breach by the indemnifying party under this Lease that has not been cured. However, this indemnification doesn't cover claims or losses arising from the negligence or intentional misconduct of the indemnified party. A party that seeks indemnification must promptly give the other party notice of any legal action. But a delay in notice won't relieve an indemnifying party of any liability to an indemnified party, except to the extent the indemnifying party can show that the delay prejudiced the

- 29 -

defense of the action. The indemnifying party may participate in or assume the defense. If the indemnifying party elects to assume the defense, then the indemnifying party must give the other party notice of its election; may select counsel satisfactory to the other party; is not liable to the other party for any fees of other counsel or any other expenses incurred by the other party in defending the action, other than reasonable investigation costs; and must not compromise or settle the action without the other party's consent; and the indemnified party must not unreasonably withhold its consent to any proposed settlement, and has no liability with respect to any compromise or settlement effected without its consent. If an indemnifying party doesn't give notice of its election to assume the defense of an action within 10 days after it receives notice of the action, then the indemnifying party is bound by any determination made in the action or by any compromise or settlement that the other party may effect. Notwithstanding anything to the contrary in this Lease, you and we hereby waive any claims that one of us may have against the other with respect to consequential, incidental, or special damages.

*See* AR88-98.

As stated in Paragraph 14, Southline unambiguously promised to indemnify Plaintiffs for any acts or omissions by Southline, and any breach under this Lease that had not been cured. *See* AR88-98. This alone establishes any "foreseeability" requirement and that the parties intended for attorney's fees to be recoverable damages for a breach (rather than barred by the last sentence in the provision). *See id.; Bi-Exconomy Mkt., Inc.,* 10 N.Y.3d at 192-93 (citing *Ashland Mgt. v. Janien,* 82 N.Y.2d 395, 403 (N.Y. 1993).

- 30 -

Likewise, under Section 17, Southline promised Plaintiffs "quiet enjoyment of the Premises and the Easements during the Term as long as [Plaintiffs] pay the rent and fulfill the requirements of this Lease;" that Southline is "the fee owner of the Premises and the Easements and [its] ownership is free and clear of all liens, claims, and encumbrances other than any which don't interfere with our use of the Premises and the Easements;" that Southline has "the lawful right and authority to sign [the Lease];" and that Southline "has obtained and delivered to [Plaintiffs] the consents of all parties that hold any lien on or interest in the Premises or the Easements." *See* AR88-98. After Plaintiffs fulfilled all of their obligations under the Lease, Southline failed to obtain or deliver the consents of the School District or Town as a result of the restrictive covenant. *See* AR8-98, 174-82; 385-91. This language shows that Southline was under a known obligation to ensure that the property could be used as it was intended and, if not, it would undertake those costs and fees incurred by Plaintiffs to do so. *See id.*

Finally, and most importantly, the parties explicitly and unambiguously contemplated attorney's fees as an obtainable form of relief in Paragraph 23 by agreeing to award the prevailing and nonbreaching party "attorney's fees and costs." *See* AR88-98. Had the parties truly intended for attorney's fees to be barred under the Lease, or "waived" under Paragraph 14, they would not have provided language to the contrary like they did here. *See id.* The consequential waiver included at

Paragraph 14 was merely to prevent the parties from seeking other forms of consequential damages such as anticipated profits that were lost (which were not sought by Plaintiffs against Southline). *See id.* At the very least, Paragraphs 14, 17, and 23 create a question of fact as to whether the parties' contemplated or intended to include attorney's fees as a form of recoverable damages, rather than waived "consequential damages" pursuant to the last sentence in Paragraph 14. *See id.*

Rather than review these potentially conflicting provisions within the Lease that were presented by Plaintiffs, or analyze any evidence submitted by Plaintiffs relating to the foreseeability of attorney's fees, the District Court wrongfully drew all reasonable inferences in favor of Southline (the moving party) and determined that this single sentence completely waived Plaintiffs' attorney's fees. *See* SPA10-14. "Where the parties dispute the meaning of particular contract clauses, the task of the court is to determine whether such clauses are ambiguous when 'read in the context of the entire agreement, and where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity." *Law Debenture Trust Co. v. Maverick Tube Corp.,* 595 F.3d 458 467 (2d Cir. 2010) (citations and internal marks omitted). "[T]he objective of contract interpretation is to give effect to the expressed intentions of the parties," *Hunt Ltd. v. Lifschultz Fast Freight, Inc*., 889 F.2d 1274, 1277 (2d Cir. 1989), and "[t]he best evidence of what

parties to a written agreement intend is what they say in their writing," *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) (internal quotation marks omitted). "Thus, a written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms, [and without the aid of extrinsic evidence," *Law Debenture Trust Co.,* 595 F.3d at 467-468 (citations omitted) because "the words [of a contract themselves] are always the most important evidence of the parties' intention," *Network Publishing Corp. v. Shapiro*, 895 F.2d 97, 99 (2d Cir. 1990). The court should read the contract "as a whole to ensure that undue emphasis is not placed upon particular words and phrases and to safeguard against adopting an interpretation that would render any individual provision superfluous." *Law Debenture Trust Co.,* 595 F.3d at 468 (citations omitted). Lastly, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Bailey v. Fish & Neave,* 8 N.Y.3d 523, 528 (2007). If the words within one provision in an agreement is susceptible to multiple meanings given the other words or provisions in the agreement, "a court is not free to alter the contract to reflect its personal notions of fairness and equity," nor is it permitted to grant summary judgment in favor of the moving party given those ambiguities. *See Greenfield,* 98 N.Y.2d at 569-70; *Law Debenture Trust Co.,* 595 F.3d at 468.

- 33 -

At the very least, the evidence that was presented created a triable issue of fact as to whether the parties contemplated and intended to include attorney's fees under the Paragraph 14 waiver. *See* SPA10-14. Therefore, the Second Circuit should reverse this decision.

**III. THE DISTRICT COURT ERRONEOUSLY CONCLUDED BASED ON ITS ADJUDICATION OF MATERIAL ISSUES OF DISPUTED FACT AND ITS RETROACTIVE CONCLUSION OF THE NATURE AND SCOPE OF THE RESTRICTIVE COVENANT THAT PLAINTIFFS' RELIANCE WAS NOT REASONABLE OR FORESEEABLE AND THAT SOUTHLINE'S WARRANTY WAS AUTOMATICALLY UNENFORCEABLE.**

### a. Fraud Elements

"To prove fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc*., 98 F.3d 13, 19-20 (2d Cir. 1996) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Natl Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).

- 34 -

**b. Plaintiffs were not in a greater position of knowledge than Southline with respect to the restrictive covenant in Southline's own deed, and any alleged knowledge of the restrictive covenant by Plaintiffs at the time of the contract alone was insufficient to dismiss Plaintiffs' fraud claims on summary judgment**

In its Decision and Order, the District Court wrongfully dismissed Plaintiffs' fraud claim on the basis that Plaintiffs could not have reasonably relied on Southline's representations "that the property was free and clear of all liens, claims, and encumbrances" because "prior to signing the contract, Southline had actual knowledge that there was a significant encumbrance on the property material to its use as a site for a commercial tower. It then drafted a statement to the contrary, and placed the draft contract before Southline's board for signature." *See* SPA10-14. The District Court then stated that it did not review "the other objections raised" in the motion papers based on this conclusion. *See id.*

Specifically, the District Court relied on two alleged facts in support of its conclusion that Plaintiffs *knew* that the restrictive covenant would encumber its intended purpose of constructing the telecommunications tower on the Proposed Site: (1) Plaintiffs are "in the business of sitting, permitting, and constructing telecommunications towers;" and (2) Plaintiffs' "leasing agent obtained a copy of the deed including the restrictive covenant." *See id.* This was plain error because knowledge of the restrictive covenant alone does not automatically render representations null and void, nor does is it sufficient to establish Plaintiffs' separate

and distinct knowledge that Southline's representations were materially false (especially had the District Court resolved all ambiguities and drew all factual inferences in Plaintiffs' favor), or that Plaintiffs' reliance on said representations was unreasonable. *See id.; see also DDJ Mgmt., LLC v. Rhone Grp. L.L.C.,* 15 N.Y.3d 147, 152-54 (holding that a plaintiff "should not be denied recovery merely because hindsight suggests that it might have been possible to detect the fraud when it occurred"); *Gonzalez v. 40 W. Burnside Ave. LLC,* 107 A.D.3d 542, 544 (1st Dep't 2013) (holding that "[w]hether the plaintiff could justifiably rely on the false representation is an issue of fact. The question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive. . . . A plaintiff's reliance on a misrepresentation may be justified even if the plaintiff is represented by counsel."); *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 328 (1st Dep't 1996) (holding that, as a general rule, the issue of reasonable reliance should be decided by the trier of fact, not decided as a matter of law, and, as such, reliance is rarely suitable matter for a motion to dismiss the complaint). In other words, knowledge of the restrictive covenant (especially when considering the conflicting language in Southline's charter) over the entre property is not the same as knowledge that this restrictive covenant would "interfere with [Plaintiffs' intended] use of the [much smaller Proposed Site]." *See id.*

Initially, in its analysis, the District Court cut off the most crucial portion of the representation at issue in the Lease, which was in and of itself plain error. *See* SPA10-14. In its Decision and Order, the District Court stated that the representation at issue was that Southline promised that the property was "free and clear of all liens, claims and encumbrances." *See id.* However, this cut off a key portion of the representation within the Lease, which reads in its entirety as follows: Southline promises Plaintiffs that it is "the fee owner of the [Proposed Site;] your ownership is free and clear of all liens, claims and encumbrances *other than any which don't interfere with our use of the [Proposed Site]; . . .* and *you have obtained and delivered to us the consents of all parties that hold any lien on or interest in the [Proposed Site]."* *See* AR88-98 (cutting off the italicized portion of the provision).

Southline did not promise that the property was "free and clear of all liens, claims and encumbrances" generally but, rather, these liens, claims and encumbrances would not "interfere with Plaintiffs' intended use of the Proposed Site *and if it did,* that Southline had obtained all consents necessary so that Plaintiffs could overcome such obstacles. *See* AR88-98. In short, knowledge that the property is subject to a restriction that said property be used for recreational purposes or in furtherance of Southline's charter, is not the same as having knowledge that a 50 foot by 50 foot segment (the "Proposed Site") cannot be used for a telecommunications tower, or that Southline has failed to obtain consents of those

- 37 -

necessary parties that do hold such a lien or interest on that small area. *See* SPA10-14; AR88-98, 183-88, 402-409.

It was improper for the District Court to only consider a portion of this representation in its analysis, and to alter the contract based on its own personal notions. *See Greenfield,* 98 N.Y.2d at 569-70; *Law Debenture Trust Co.,* 595 F.3d at 468. It was also improper for the District Court to conclude that, at the time of formation in 2016, Plaintiffs would know that this restrictive covenant, with respect to the use of the property as a whole, and with respect to Southline's charter, would prevent Plaintiffs from building a telecommunications tower on a small portion of it, especially given the conflicting representations made by the property/deed owner (who owned the property since 1985). *See* SPA10-14; AR88-98, 183-88, 402-409. It is not unreasonable for a party to trust the representations of the land/deed owner as to their own property even in the face of conflicting language in that deed. *See id.* Had the facts and evidence been viewed in favor of the non-moving party (Plaintiffs), there would have been at least a triable issue of fact requiring denial of Southline's motion. *See* SPA10-14.

Further, as mentioned above, the District Court wrongfully assumed that, simply because there was a restrictive covenant in the deed that required the property to be used for "recreational purposes," that Plaintiffs would have full knowledge *at the time of formation* that Southline's representation regarding the intended use of

the *Proposed Site* (a much smaller portion of the property) was materially false. *See* SPA10-14. Pursuant to the Lease, Plaintiffs planned to use only a small portion of the property (the "Proposed Site") for its telecommunications facility, and it was always Plaintiffs' position that this facility would not interfere with the property's prior use as a little league and recreational field, or Southline's mission within its certificate of incorporation. *See* SPA10-14; AR88-98, 183-88, 402-409. Even if Plaintiffs were well aware that the property was required to be used for recreational purposes, or its use needed to be in furtherance of Southline's charter, it would not be unreasonable to believe that Plaintiffs' use of such a small portion of the property would be acceptable given Southline's assurances, especially since the property as a whole would continue to be used for recreational purposes after its construction. *See id.*

In fact, as evidenced by its arguments on parties' prior motion relating to this restrictive covenant, Plaintiffs believed that this facility would only further that purpose. *See* AR137-71. Plaintiffs had no intention of converting the property to something other than a recreational field by using such a small area for its telecommunications facility. *See id.;* AR19-59, 174-82, 385-91. Moreover, *at the time of the Lease's formation,* it was reasonable for Plaintiffs to believe Southline's representations as the deed provided uses in accordance with Southline's charter and that charter allowed for any and all uses that furthered their mission statement so

- 39 -

long as it was not for personal pecuniary benefit of their officers. *See* AR88-98, 183-88, 402-409. It was erroneous for the Court to infer from Plaintiffs' knowledge of the language within the restrictive covenant alone, that Southline's representations about the telecommunications tower were false or unreasonable (especially when considered at the time of the Lease's formation, and not after the District Court ruled on the restrictive covenant in 2021). *See* SPA10-14.

Additionally, it was clearly erroneous for the Court to infer on summary judgment that Plaintiffs (the non-moving party with respect to Southline's motion for dismissal) would have *more* knowledge than Southline about a restrictive covenant within *Southline's own* deed concerning ambiguous terms within that deed and corresponding charter (the owners of the property, charter, and deed itself for over 30 years) simply because Plaintiffs were in the "business of sitting, permitting, and constructing communications towers." *See* SPA10-14. There is zero factual or legal support to such an inference and, therefore, this decision should be reversed on these grounds alone. As stated throughout Plaintiffs' prior submissions on summary judgment, Southline had independent counsel review the Lease, which again involved a property and deed that has been *owned by Southline for over thirty years*, and, therefore, it would be erroneous to infer that Plaintiffs would have more knowledge as to the property's uses than Southline. *See* AR174-82, 189-267, 378-91, 394-401, 977-1057.

Likewise, the District Court wrongfully inferred that "Plaintiffs drafted a statement to the contrary [of the restrictive covenant] and placed the draft contract before Southline's board for signature" when it dismissed its fraud claim. *See* SPA10-14. Again, Plaintiffs are the non-moving party for purposes of Southline's dismissal motion. *See id.* As the District Court acknowledges in this decision, Plaintiffs presented evidence that they were unsure who pasted the "legal description" into the deed itself, and that this legal description was simply the "metes and bounds" of the property rather than entire deed language. *See id.* ("Although Mr. Carpenter has no personal recollection of preparing the contract, he or someone working for him inserted the 'metes and bounds' legal description and cut off the adjacent language concerning the restrictive covenant"). It was improper for the District Court to make inferences in favor of Southline from this evidence that Plaintiffs *purposely* omitted the restriction from the Lease to coerce Southline's signature. *See id.*

Lastly, the District Court committed plain error by coming to the conclusion that Plaintiffs "knew . . . at the time it entered into the contract" that Southline's representation was "false" because the District Court had not ruled on the restrictive covenant until 2021, roughly five years after the parties entered into the Lease. *See* SPA10-14; AR137-71. As the District Court was well aware, this lawsuit began as an action by Plaintiffs against the Town relating to their denial of Plaintiffs'

- 41 -

application.  *See* AR19-59.  The parties then engaged in contentious litigation over the ambiguous term "recreational purpose" within the deed's restrictive covenant over the next two years.  *See* AR19-171.  These events alone establish that Plaintiffs did not *know* that this restriction would prevent their construction of a telecommunications facility until 2021 at the absolute earliest.  *See id.*  Again, it was plain error for the District Court to infer Plaintiffs' knowledge prior to 2021, or to retroactively apply its decision in January 2021 to the parties' knowledge at the time of formation in 2016, especially on summary judgment in favor of the moving party Southline.  *See* SPA10-14.

As stated above, Southline owned the property since 1985 and had many more years' experience and knowledge about their own property and charter, as well as any impact the restrictive covenant would have on said property (or a portion of it).  *See* AR88-98, 183-88, 402-409.  Had the Court drawn all reasonable inferences and resolved all ambiguities in favor of Plaintiffs as it should have, it could not have found that Plaintiffs *knew at the time of formation* that Southline's representations regarding the use of the property were materially false.  *See* SPA10-14.  Instead, at the very least, the District Court would have found a triable question of fact as to this nettlesome fact-intensive issue of reliance, requiring denial of Southline's motion.

Accordingly, the Second Circuit should reverse the Decision and Order.

- 42 -

## IV.  THE DISTRICT COURT COMMITTED PLAIN ERROR WITH RESPECT OT THE INDEMNITY PROVISION FOR THE SAME REASONS STATED ABOVE

In its Decision and Order, the District Court conducts a short analysis relating to the indemnity provision at Paragraph 14 in support of granting Southline's motion and denying Plaintiffs' motion.  *See* SPA10-14.    The indemnity provision at Paragraph 14 is recited in full above.  In short, under this provision, both parties agreed to hold the other harmless for claims and losses to the extent that claims or losses are caused by (1) "acts or omissions or activities on the propert[y or Proposed Site];" or (2) a breach by the indemnifying party under this Lease.  *See* AR88-98.

Plaintiffs refer the Second Circuit to its prior arguments above to establish that the District Court wrongfully concluded that the second circumstance of a breach did not apply.

As for the first circumstance (an act or omission), the District Court committed plain error because it again misapplied the summary judgment standard by resolving a ambiguous contract provision in favor of the moving party.  *See* SPA10-14. Here, the District Court improperly interpreted this section to only involve physical acts to the property itself.  *See id.*  However, in contrast to the District Court's interpretation, based on the plain language of Paragraph 14, the first circumstance applies to *any* "act or omission" **_or_** "activities on the property" (rather than just physical "acts or omissions to the property" itself) *See* AR88-98. This use

- 43 -

of "or" between the words "acts or omission" and "activities on the property" shows that either circumstance would implicate this first option. *See id*. Instead, the District Court improperly altered the words of the contract to reflect its personal notions of this provision's meaning. *See Greenfield,* 98 N.Y.2d at 569-70; *Law Debenture Trust Co.,* 595 F.3d at 468.

At the very least, this provision is ambiguous and should have been resolved in favor of the non-moving party on summary judgment. *See* AR88-98. Accordingly, the District Court committed plain error by coming to such a quick conclusion that the first circumstance did not apply, and resolving this ambiguity in favor of Southline.

## V. THE DISTRICT COURT ERRONEOUSLY GRANTED SOUTHLINE FEES AND COSTS UNDER THE LEASE IN CONTRADICTION OF ITS DETERMINATION OF PLAINTIFFS' CLAIM AND WHERE PLAINTIFFS DID NOT INITIATE THIS LAWSUIT AGAINST SOUTHLINE BUT, RATHER DEFENDED THE CHALLENGE TO THE RESTRICTIVE COVENANT WHEN SOUTHLINE FAILED TO DO SO

Finally, after granting Southline's motion and dismissing Plaintiffs' claims, the District Court granted Southline attorney's fees as the "prevailing party." *See* SPA10-14; AR88-98. Plaintiffs incorporate by reference their arguments above as to why Southline should not have been adjudged the prevailing party on Plaintiffs' claims.

However, Plaintiffs further note that, in awarding attorney's fees here under the Lease, the District Court has come to an inconsistent decision in relation to its

prior determinations that attorney's fees constitute unforeseeable and consequential relief that is barred under Paragraph 14. *See* SPA10-14. Plaintiffs reiterate that Paragraph 23 shows that the parties considered attorney's fees at the time of formation and agreed that such relief was not only obtainable but also foreseeable. *See* AR88-98. It is unjust and erroneous for the District Court to deny Plaintiffs' breach of contract claim because it sought attorney's fees as an unobtainable form of relief, and then award Southline the very same relief for defending their admitted misrepresentations. *See* SPA10-14.

Moreover, Plaintiffs did not file this lawsuit against Southline but, instead, attempted to enforce its rights under the Lease and challenge the Town and School District's positions as to the restrictive covenant's language. *See* AR19-59. Thereafter, the School District intervened and named Southline as a defendant. *See* AR64. Only after the District Court ruled on the restrictive covenant in January 2021 did Plaintiffs pursue its costs and fees under the Lease as a result of Southline's misrepresentations and failure to indemnify Plaintiffs. *See* AR137-173. Accordingly, it was plain error for the District Court to then award Southline attorney's fees under Paragraph 23 and the Second Circuit should reverse this determination.

## CONCLUSION

For the reasons more fully set forth above, Plaintiffs' respectfully request that this Court reverse the District Court's decision to grant summary judgment for Southline and deny Plaintiffs' summary judgment, and further relief as this Court deems just and proper.

**DATED:**     April 30, 2024                    **BARCLAY DAMON LLP**

By:     _____
Jon P. Devendorf
*Attorneys for Plaintiffs/Cross*
*Claimants/Appellants*
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York  13202
Telephone:  (315) 425-2700

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7), the typeface requirement of Fed. R. App. P. 32(a)(5), and the typestyle requirements of Fed. R. App. P. 32(a)(6). The argument section of this brief contains 7394 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and 10972 words in its entirety, and is prepared in a proportionally spaced typeface (14-point Times New Roman).

**DATED:**     April 30, 2024                 **BARCLAY DAMON LLP**

By: _____

Jon P. Devendorf
*Attorneys for Plaintiffs/Cross
Claimants/Appellants*
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York  13202
Telephone:  (315) 425-2700

- 47 -

SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Order on Motions for Summary Judgment of the
   Honorable Geoffrey W. Crawford, dated
   December 18, 2023 and filed December 19,
   2023, Appealed From............................................   SPA-1

Judgment in a Civil Case, dated and filed
   December 19, 2023, Appealed From ....................   SPA-16

**SPA-1**

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UP STATE TOWER CO., LLC AND BUFFALO LAKE ERIE WIRELESS SYSTEMS CO., LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-280 |
| SOUTHLINE LITTLE LEAGUE, INC. f/k/a SOUTHLINE ATHLETIC ASSOCIATION, | ) ) ) | |
| Defendant. | ) | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT
### (Docs. 100, 101)

The remaining issue in this dispute over the siting of a cell tower in Cheektowaga, New York concerns the claim by plaintiffs Up State Tower Co., LLC and Buffalo Lake Erie Wireless Systems Co., LLC (collectively "Up State") for payment of attorney's fees they incurred in an unsuccessful effort to obtain a municipal permit for the proposed tower. Up State seeks to recover these fees from Southline Little League, Inc. on grounds of breach of contract, fraud, and indemnity. The parties have filed cross motions for summary judgment. (Docs. 100, 101.)

### Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The material facts may include an inference or conclusion to be drawn from the evidence. In that case, "the court must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000) (interpreting Fed. R. Civ. P. 50). If the nonmoving party contends that there is a factual dispute requiring a trial, it "must

1

offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

In the case of cross motions for summary judgment, the court "evaluate[s] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (quoting *Hotel Emps. & Rest. Emps. Union, Loc. 100 v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002).

## **Facts**

The principal facts are not in dispute:

Up State is in the business of constructing communication towers for use by cell phone carriers. In 2015, Up State, through its leasing agent Carpenter Consulting Group, contacted crossclaim defendant Southline Little League, Inc. ("Southline") to inquire about constructing a tower on property owned by Southline. (Doc. 101-31.)

As its name suggests, Southline is a Little League organization comprised of parents and others interested in youth sports. (Doc. 101-38.) In 1985, Southline purchased a ball field and athletic facilities from the West Seneca Central School District. (Doc. 100-2.) The deed includes a restrictive covenant limiting the use of the property to recreational activities. (*Id.*) The covenant reads:

> THIS CONVEYANCE is subject to the restriction that the use of the above described premises shall be limited to recreational purposes only in accordance with the purposes set forth in the certificate of incorporation of Southline Athletic Association, Inc. filed with the Department of State on December 1, 1975.

(*Id.*)

2

In 2015, Up State determined that it needed an additional tower location in the Town of Cheektowaga, New York to eliminate a "dead zone" for cell phone coverage. Don Carpenter of Carpenter Consulting Group frequently acted as Up State's representative in identifying and leasing tower locations. He identified the Southline property as a potential tower site. Between September 2015 and March 2016, Mr. Carpenter negotiated with Southline over the siting of the proposed tower. (Doc. 101-31.)

In leasing its tower sites, Up State makes use of a form lease, modified to suit the circumstances of each property. Mr. Carpenter used this form lease in his negotiations with Southline. (Doc. 101-31.) The form lease includes two blank exhibit pages. Exhibit A provides space for the inclusion of a legal description of the property. Exhibit B provides a description of the proposed installation, including a sketch plan.

On March 11, 2016, Mr. Carpenter obtained a copy of Southline's deed from a law firm which represented Up State in other matters. (Doc. 101-35.) The copy Mr. Carpenter received from the law firm included the language creating the restrictive covenant. A copy of the complete legal description, including the paragraph concerning the restrictive covenant, is attached to an email from Mr. Carpenter to employees within Carpenter Consulting Group dated April 7, 2016. (Doc. 101-36.)

Mr. Carpenter has little recall of the details of the drafting of the lease because he was involved in negotiating other similar leases at the same time. At his deposition, he testified that he or his employees prepared the final version of the lease, which Up State's president, Brian Gelfand, executed on April 12, 2016. (Doc. 101-4.) In the final version, signed by the parties, the legal description is incomplete, ending in a partial sentence. The paragraph concerning the restrictive covenant has been omitted.

3

The lease contains several provisions at issue here.  (Doc. 100-3.) These include:

¶ 3 – A five-year term, commencing on the date construction begins or six months after Up State "receive[s] all governmental approvals necessary for the operation of the Communications Facility," whichever comes first.

¶ 5 – A six-month "feasibility period" allowing Up State "to conduct tests and inspections of the Property and get title reports from a title company . . . to determine if the Property is suitable for our use."  During this period, Up State enjoyed a right to terminate at "any time before the Beginning Date" without cause.  Up State could extend the feasibility period in six-month intervals upon payment of a sum of money.

¶ 13 – A termination provision allowing Up State to terminate if "(a) we can't get the required [governmental] Approvals, or (b) any Approval is canceled, terminated, or expires, or . . . (d) you don't own the Property and have authority to sign this Lease[.]"

¶ 14 – A right to indemnity for either party from claims and losses caused by "a breach by the indemnifying party under this Lease that has not been cured." The indemnity clause includes a waiver of claims for consequential damages by either side: "Notwithstanding anything to the contrary in this Lease, you and we hereby waive any claims that one of us may have against the other with respect to consequential, incidental, or special damages."

¶ 17 – A promise by Southline that it is "the fee owner of the Premises and the Easements; [and] [its] ownership is free and clear of all liens, claims and encumbrances other than any which don't interfere with our use of the Premises and the Easements . . . ."

¶ 23 – An attorney's fees provision: "If a dispute arises out of this Lease, then the prevailing party will be entitled to actual attorney's fees and costs."

4

¶ 23 – Choice of law: "This Lease will be governed by and interpreted by the laws of the state in which the Property is located." New York law applies in this case.

On October 17, 2016, Up State submitted a municipal zoning application to install a tower on Southline's property. (Doc. 1 ¶ 3.) On January 31, 2019, the Town of Cheektowaga denied Up State's application for a special use permit to construct the proposed tower. (Doc. 49-14.) The Town Board filed a written decision identifying several bases for the decision:

- "The proposed telecommunications tower will negatively alter the essential character of the neighborhood and will be detrimental to the residents thereof." (*Id.*) The Town Board identified the impact on neighboring homes and the conflict with the aesthetics and character of the area created by a 130-foot tower.
- "The proposed facility poses a danger of injury to children using the recreational Property." (*Id.*)
- "The Applicant has not demonstrated a good-faith effort to identify and consider less intrusive alternatives in sites, system designs, tower designs, and placement of the facilities on existing structures."
- The applicant failed to provide information on possible mitigation or camouflage measures such as designing the tower to resemble a flagpole.
- The applicant failed to "provide documentation to verify it has the right to proceed as proposed on the site." (*Id*). The deed restriction called into question the applicant's right to erect the tower since "[c]onstruction and operation of a telecommunications tower on the Property is not recreational use of the Property." (*Id.*)

5

## Procedural History

After denial of the zoning application, Up State filed this lawsuit on March 1, 2019,

against the Town of Cheektowaga, seeking damages and injunctive relief under the

Telecommunications Act of 1966, 47 U.S.C. §§ 151 et seq. (Doc. 1.) The West Seneca School

District intervened, bringing a counterclaim against Up State for interference with property and a

third-party action against Southline to enforce the restrictive covenant. (Doc. 7.) On June 19,

2020, Up State brought a crossclaim against Southline for breach of contract, fraud, and

indemnification. (Doc. 39.) Southline answered with a crossclaim against Up State for recission

based on unilateral mistake, mutual mistake, and impossibility. (Doc. 43.) On August 21, 2020,

the District and the Town filed motions for judgment on the pleadings. (Docs. 45, 46.) The

court granted summary judgment for the Town and District, dismissing both parties from the

action. (Docs. 71, 78.) The court maintained supplemental jurisdiction over the crossclaim,

which is the only remaining dispute.

## Analysis

### I. Breach of Contract

In seeking summary judgment for breach of contract, Up State identifies the four

elements of a contract claim under New York law: "(i) the formation of a contract between the

parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."

(Doc. 100-15 at 6 (citing *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).)

On the element of breach, Up State directs attention to the warranty at ¶ 17 of the lease that

Southline's ownership is free of any encumbrance "other than any which don't interfere with our

use of the Premises and Easements." (*Id.* at 7.) Up State contends that whether its leasing agent

knew of the deed restriction before signing the release is immaterial. "The subject

6

misrepresentation and warranty was made by Southline and Southline alone, was clear and

unambiguous, and was wrong to the substantial detriment of Plaintiffs." (*Id*. at 9.) In an

interrogatory response, Up State identified its damages as "(a) costs and legal fees associated

with the preparation and presentation of their zoning application in an amount to be determined

but not less than $100,000; and costs and legal fees and costs associated with the underlying

litigation in an amount to be determined but not less than $100,000." (Doc. 101-25, ¶ 9.)

Southline responds that the waiver of consequential damages in the contract bars the

claim for attorneys fees and related costs. "Because Plaintiffs have clearly waived consequential

damages against Southline, which are the only damages Plaintiffs seek here, Plaintiffs' breach of

contract claim should be dismissed." (Doc. 101-39 at 6.) Southline also contends that the

damages sought by Up State were not caused by any breach of the lease agreement and that Up

State has failed to mitigate its damages by canceling the lease and "walking away" when it first

learned of the deed restriction. (Doc. 101-39 at 9-11).

The court denies Up State's breach-of-contract claim on the basis of the waiver of

consequential damages. Because this ruling is sufficient to resolve the breach of contract claim,

the court does not reach the arguments concerning causation and mitigation of damages.

**II. Consequential, Incidental, or Special Damages**

Since *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854), courts and

commentators have distinguished between general damages and consequential or special

damages for breach of contract. The great insight of *Hadley v. Baxendale* is that parties enter

contracts on the basis of their general experience of the world, shared by reasonable people, and,

in some cases, additional information about the intentions of the other party and the potential

7

consequences of breach. The measure of damages depends upon the extent of this knowledge of

the parties at the time of formation.

> Where two parties have made a contract which one of them has broken, the damages
> which the other party ought to receive in respect of such breach of contract should
> be such as may fairly and reasonably be considered arising naturally, i.e. according
> to the usual course of things, from such breach of contract itself, or such as may
> reasonably be supposed to have been in the contemplation of both parties, at the
> time they made the contract, as the probable result of the breach of it.

*Id*. at 151.

By the phrases "arising naturally" and "usual course of things," the decision refers to

predictable consequences which a reasonable person would anticipate. These are frequently

called "general damages." *See* 24 Williston on Contracts § 64:16 (4th ed.) ("General damages

are considered to include those damages that flow naturally from a breach, that is, damages that

would follow any breach of similar character in the usual course of events."). In contrast,

consequential damages are those that a party to a contract can anticipate with the benefit of

additional information specific to the transaction. As the judge expressed it in *Hadley v.*

*Baxendale*,

> [I]f the special circumstances under which the contract was actually made were
> communicated by the plaintiffs to the defendants, and thus known to both parties,
> the damages resulting from the breach of such a contract, which they would
> reasonably contemplate, would be the amount of injury which would ordinarily
> follow from a breach of contract under these special circumstances so known and
> communicated.

*Id*. at 151.

Few common law principles have survived the intervening two centuries with so little

change. *See* U.C.C. § 2-715(2) (Unif. L. Comm'n 2002) ("Consequential damages resulting

from the seller's breach include (a) any loss resulting from general or particular requirements and

needs of which the seller at the time of contracting had reason to know . . . ."); Restatement

(Second) of Contracts § 351 ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.").

Judicial decisions have long followed these principles in distinguishing between general and consequential damages. "General damages are the natural and probable consequence of the breach of a contract. By contrast, consequential, or special damages do not "directly flow from the breach." *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y. 3d 799 (2014). In this context, words like "natural" and "probable" are terms of art. They refer to consequences lying within the parties' expectations, either because a reasonable person would anticipate them (general damages) or because of specific information known to the parties at formation (consequential damages). *See* 1-9 Murray on Contracts § 121 (2011) ("'General' damages are said to arise naturally from a breach of contract in the sense that they are within the 'common experience of ordinary person' and are, therefore, implied or presumed by the law. . . . If at the time of contract formation . . . the seller is made aware of the 'special' circumstances that could give rise to . . . unusual losses, the seller is liable for these additional 'special' damages. 'Special' damages are measured, not by the value of the promised performance alone the goods or services themselves but by the gains such performance could produce for collateral reasons, or the loss that is produced by the absence of such performance." (cleaned up; footnotes omitted)).

Although the distinction between general and consequential damages has its origins in foreseeability, in practice courts frequently distinguish between damages measured by the difference between the value of what was promised and what was delivered and, alternatively, the subsequent consequences of the breach.

> General damages are sometimes called "market" damages because, when the promised performance is the delivery of goods, such damages are measured by the difference between the contract price and the market value of the goods at the time of the breach. . . .

9

"Special" or "consequential" damages, on the other hand, seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach.

*Schonfeld v. Hilliard*, 218 F.3d 164, 175–76 (2d Cir. 2000).

This case contains a further refinement. The parties agreed to limit any claim for breach of contract to general damages. They did so by waiving any claims for consequential, incidental, or special damages.   Such waivers are enforced under New York law, subject to review for unconscionability. *See Siemens Credit Corp. v. Marvik Colour, Inc.*, 859 F. Supp. 686 (S.D.N.Y. 1994) (disclaimer of consequential damages upheld). Up State makes no claim that the waiver of consequential damages is unconscionable, since the waiver appears in the form contract which it drafted itself.

With these general principles in mind, the court seeks to apply them to the damage claim in this case. The sequence of undisputed events makes it clear that the attorneys fees sought by Up State are consequential damages. Let's take a moment to review the sequence of events:

- In April 2016, the parties signed the lease.
- In subsequent months, Up State prepared an application for zoning permission to construct the tower. The application included the lease, submitted as evidence of Up State's control over the subject property. Up State submitted the application in October 2016.
- In January 2019, the Town of Cheektowaga denied the permit on multiple grounds, including the restrictive covenant.
- Up State filed suit against the Town in March 2019. The relief sought by Up State included reformation of the deed to remove the restrictive covenant as well

10

as a ruling that the Telecommunications Act of 1966 took precedence over the

deed restriction and that the Town was required to issue the necessary permits.

- The court ruled against Up State on these issues by decisions dated June 24, 2021

and October 21, 2021. (Docs. 71, 78.)

- The damages sought by Up State include attorneys fees and costs incurred in

preparing and defending the zoning application as well as the cost of pursuing this

litigation against multiple parties.

Because the parties chose to confine the scope of damages to general damages, the court

turns to the principles developed to limit contract damage by the parties' understanding and

expectations. As we have seen, general damages are the damages that a reasonable person could

anticipate at the time of contract formation. For purposes of discussion, we assume that the

warranty concerning the absence of encumbrances was a breach by Southline. What would a

reasonable person, not possessing special information about the parties' plans, have anticipated?

He or she would have known at the time of formation that Up State intended to build a

tower and that the restrictive covenant might present an obstacle. He would have seen the

generous provisions for cancellation placed by Up State in its form contract. From these

provisions, a reader might reasonably expect Up State to walk away from the project if it did not

receive planning permission. Alternatively, a reader might be unable to predict the consequences

of a denial of a permit by the town.

What no reasonable person could have anticipated from the language of the lease was Up

State's decision to litigate the issue without success for several years. To anticipate the litigation

and resulting costs would require special information about All State's needs and intentions.

Information of this type forms the basis for claims for special – not general – damages. The

11

attorneys fees and other costs sought by Up State are clearly consequential damages in the sense that they would not be foreseeable without additional information. Because the protracted litigation over the zoning permit could not have been anticipated without such information, the damages sought are fairly described as "consequential" and not "general."

The court will enforce the waiver provision and, consistent with the terms of the lease, exclude claims for consequential damages. The remaining claim for general damages would be for the diminution in value between what Up State bargained for in the lease and what it received. Up State makes no such claim. Accordingly, the court DENIES the motion for summary judgment filed by Up State on its claim for breach of contract.

For the same reasons, the court GRANTS Southline's motion for summary judgment on the claim of breach of contract. The waiver of consequential damages excludes Southline's claim for attorneys fees and other costs of pursuing the zoning permit and litigating the Telecommunications Claim in this court.

**III. Fraud**

Up State seeks summary judgment on its claim of fraud. It correctly identifies the elements of the cause of action as:

- A material false representation made by the defendant;
- Intent by the defendant to defraud the plaintiff;
- Reasonable reliance by the plaintiff on the representation;
- Damages suffered as a result of the reliance.

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996). Southline responds that the claim of fraud is identical to the claim of breach of contract; that it is not pled with particularity; and that Up State drafted the lease and knew of the deed restriction

12

when it entered into the contact; and that Up State cannot establish reasonable reliance. Southline also contends that the consequential damages sought by Up State exceed the direct out-of-pocket losses recoverable in fraud.

The court DENIES Up State's motion for summary judgment in its favor on the fraud claim. Interpreting the facts in the light most favorable to the non-moving party, the court finds ample support for an inference that Up State knew about the restrictive covenant at the time it entered into the contract. It was Up State, after all, that obtained the underlying deed, prepared the legal description, and omitted the reference to the restrictive covenant in preparing the final version of the contract. A party cannot reasonably rely on a statement it knows itself to be false or mistaken.

Turning to Southline's motion for summary judgment, the court reverses the field and considers the facts in the light most favorable to Up State. With respect to knowledge of the restrictive covenant, the undisputed facts are:

- Up State is in the business of siting, permitting and constructing communications towers;

- Up State's leasing agent obtained a copy of the deed, including the restrictive covenant. Although Mr. Carpenter has no personal recollection of preparing the contract, he or someone working for him inserted the "metes and bounds" legal description and cut off the adjacent language concerning the restrictive covenant.

Through these undisputed facts, Southline has established that Up State could not have reasonably relied on the contract language that the property was "free and clear of all liens, claims and encumbrances." Prior to signing the contract, Southline had actual knowledge that there was a significant encumbrance on the property material to its use as a site for a commercial

13

tower. It then drafted a statement to the contrary and placed the draft contract before Southline's board for signature. Under these facts—which cannot reasonably be subject to any other interpretation—Up State cannot prove reasonable reliance.

It is unnecessary to reach the other objections raised by Southline to Up State's fraud claim.

The court GRANTS Southline's motion for summary judgment on the fraud claim.

**IV. Indemnity**

The indemnity provision appears as paragraph 14 of the contract. That is the same paragraph that excludes claims for consequential damages. Under paragraph 14, both parties have the right to seek indemnity under two circumstances: a claim or loss caused by acts or omission in operation or activities on the property or "a breach by the indemnifying party under this Lease that has not been cured."

The first basis for indemnification does not apply. There have been no operations or activities on the property. It is the second provision governing a breach of the lease that is at issue. This right to sue for breach of contract is limited by the final sentence of paragraph 14, discussed at length in the first section of this ruling. By its terms, the waiver of consequential damages applies to "any claims" and, most certainly, to claims for breach of the contract described in the preceding sentences.

For these reasons, the court DENIES the motion for summary judgment by Up State and GRANTS the motion for summary judgment by Southline.

**Conclusion**

The remaining claim is Southline's claim for legal fees incurred in defending the claim filed by Up State. The relevant portion of paragraph 23 states: "If a dispute arises out of this

**SPA-15**

Lease, then the prevailing party will be entitled to actual attorney's fees and costs."  Within

30 days, Southline shall file a supplemental memorandum, including an affidavit detailing its

fees and costs, in support of any claim for attorneys fees.  A response is due 30 days later.  Any

reply shall be filed within 15 days thereafter.

Dated this 15th day of December, 2023.

_____

Geoffrey W. Crawford, Judge
United States District Court

15

**SPA-16**

Judgment in a Civil Case

United States District Court
_____WESTERN DISTRICT OF NEW YORK_____

UP STATE TOWERS CO., LLC et al

    v.

TOWN OF CHEEKTOWAGA et al

**JUDGMENT IN A CIVIL CASE**
CASE NUMBER: 1:19-cv-00280

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that the court Denies the motion for summary judgment by Up State and Grants the motion for summary judgment by Southline.

Date: December 19, 2023

MARY C. LOEWENGUTH
CLERK OF COURT

By: s/Tatiana
    Deputy Clerk